UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| APRIL BLANCH, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | NO. 3:17-cv-01494 |
| ) | CHIEF JUDGE CRENSHAW |
| TRANS UNION, LLC, ET AL., ) | |
| ) | |
| Defendants. ) | |

# MEMORANDUM OPINION

April Blanch brought suit against numerous defendants, under the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq., related to alleged errors in her credit reports. All defendants have been dismissed except Macy's Retail Holdings, Inc. ("Macy's") and Citibank, N.A. ("Citibank"). These two defendants filed a joint Motion to Dismiss (Doc. No. 38), to which Blanch has responded in opposition (Doc. No. 40) and the defendants have replied (Doc. No. 43). The motion will be granted.

I.  Background[1]

On October 17, 2012, Blanch filed Chapter 13 Bankruptcy and her Chapter 13 plan was confirmed the same day. (Doc. No. 1 at ¶ 8.) On June 7, 2017, Blanch's bankruptcy was discharged. (Id. at ¶ 9.) Blanch alleges that the following trade lines are "incorrectly reporting with a status of account included in bankruptcy": (1) DSNB/Macy's with account number: 41818278**** (Macy's), and (2) Goodyear/Cbna with account number: 603551012480**** (Citibank). (Id. at ¶ 7.) On September 1, 2016, Blanch obtained her credit files and noticed these trade lines. (Id. at ¶

---

[1] The Court only recites facts relevant to the remaining defendants. For the purposes of a motion to dismiss, all facts in the Complaint are taken as true.

10.) On October 25, 2017, Blanch submitted a letter to the credit reporting agencies Trans Union and Equifax disputing the trade lines. (Id. at ¶ 11.) In these dispute letters, Blanch explained that the subject accounts were discharged in her bankruptcy, attached a copy of the Order of Discharge, and asked the credit bureaus to report the correct status. (Id.)

Blanch alleges that Trans Union and Equifax forwarded her dispute to Macy's and Citibank. (Id. at ¶ 12.) On November 1, 2017, Blanch received Trans Union's investigation results. (Id. at ¶ 13.) These results showed that the trade lines continued to report with what Blanch believed to be "an incorrect status of account included in bankruptcy instead of reporting as discharged in bankruptcy."[2] (Id.) Blanch alleges that she has suffered credit and emotional damages due to the defendants' negligent and/or willful failures to correct the errors in her trade lines. (Id. at ¶ 15, p. 7-11.)

II.     Legal Standard

To survive a Rule 12(b)(6) motion, "'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 557). "If the plaintiffs do not nudge their claims across the line from conceivable to plausible, their complaint must be dismissed." Lutz v. Chesapeake Appalachia, L.L.C., 717 F.3d 459, 464 (6th Cir. 2013) (citation and brackets omitted). Dismissal is likewise appropriate where the complaint, however factually detailed, fails to state a claim as a matter of law. Mitchell v. McNeil, 487 F.3d 374, 379 (6th Cir. 2007).

---

[2] Blanch did not receive Equifax's investigation results. (Doc. No. 1 at ¶ 14.)

As a general rule, matters outside the pleadings may not be considered in ruling on a 12(b)(6) motion to dismiss unless the motion is converted to one for summary judgment under Federal Rule of Civil Procedure 56. See Weiner v. Klais & Co., 108 F.3d 86, 88 (6th Cir. 1997). There are, however, exceptions to this general rule. Documents attached to the motion to dismiss briefing may be considered part of the pleadings if they were incorporated into the complaint by reference and are central to the plaintiff's claim. Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007); Jackson v. City of Columbus, 194 F.3d 737, 745 (6th Cir. 1999); Snodgrass-King Pediatric Dental Assocs., P.C. v. DentaQuest USA Ins. Co., Inc., 79 F. Supp. 3d 753, 761 (M.D. Tenn. 2015). In this case, the Complaint directly incorporates Trans Union's November 1, 2017 investigation results. Plaintiff did not attach this document to the Complaint, but she appended it to her response to the Motion to Dismiss. (Doc. No. 40-1.) Because the investigation results were incorporated into the Complaint by reference and are central to Blanch's claim, the Court will consider them without converting the motion to one for summary judgment.[3]

III.    Discussion

The FCRA "exists 'to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy.'" Boggio v. USAA Fed. Savings Bank, 696 F.3d 611, 614 (6th Cir. 2012) (quoting Safeco Ins. Co. v. Burr, 551 U.S. 47, 52 (2007)). "To that end, [15 U.S.C. § 1681s-2] is designed to prevent 'furnishers of information' from spreading inaccurate consumer-credit information." Id. Section 1681s-2 imposes a duty on any entity that provides information about a consumer's credit history, upon receiving a report that the consumer disputes the accuracy or completeness of the information provided; to investigate; and, if needed, to correct

---

[3] While Plaintiff submitted this exhibit to her motion to dismiss briefing, defendant has no objection, and, indeed, seeks to rely on it at this stage as well.

3

the report of any "inaccurate or incomplete" information. Section 1681s–2(b) imposes five distinct duties on a furnisher of information that has been notified of a dispute: investigate the dispute; review all relevant information; report the results to the consumer reporting agency; if the information is incomplete or inaccurate, report those results to all other consumer reporting agencies; and if the disputed item is found inaccurate or cannot be verified, modify, delete, or block the item. A plaintiff may prevail by showing that the entity violated any one of them.[4] Boggio, 696 F.3d at 618.

Blanch alleged that the information reported by Macy's and Citibank was inaccurately reflecting the status of her accounts in bankruptcy and that Macy's and Citibank did not correct these inaccuracies. The FCRA does not define the term "accurate," but the Federal Trade Commission has promulgated a regulation that defines the term "accuracy" for consumer credit reporting:

> Accuracy means that information that a furnisher provides to a consumer reporting agency about an account or other relationship with the consumer correctly:
> (1) Reflects the terms of and liability for the account or other relationship;
> (2) Reflects the consumer's performance and other conduct with respect to the account or other relationship; and
> (3) Identifies the appropriate consumer.

12 C.F.R. § 41.41(a). The Sixth Circuit has observed that "false information about a consumer is clearly inaccurate, and so failing to report the discovery of false consumer information to all [consumer reporting agencies] would violate [section] 1681s–2(b)(1)(D)"; and "[section] 1681s–

---

[4] "A consumer who demonstrates that a furnisher was negligent in breaching one of these duties with respect to that consumer's disputed information is entitled to actual damages under § 1681o," and "if a consumer can establish that a furnisher willfully violated one of its duties, then under § 1681n the consumer may recover actual or statutory damages, as well as punitive damages." Boggio, 696 F.3d at 618. "Costs and reasonable attorney's fees are also authorized under both §§ 1681n and 1681o." Id.

2(b)(1)(D) [also] is violated if a report of an investigation, although it contains correct information, nevertheless 'provides information in such a manner as to create a materially misleading impression.'" Boggio, 696 F.3d at 617. "The duty [to correct an incomplete or inaccurate report] equally extends to the discovery of both inaccurate or incomplete consumer information and to the discovery of consumer information that is materially misleading." Id. at 618.

The Federal Trade Commission has explicitly stated: "A consumer report may include an account that was discharged in bankruptcy (as well as the bankruptcy itself), as long as it reports a zero balance due to reflect the fact that the consumer is no longer liable on the discharged debt." 16 C.F.R. pt. 600 app'x § 607(b)(6) (2010) (available at https://www.gpo.gov/fdsys/pkg/CFR-2011-title16-vol1/pdf/CFR-2011-title16-vol1-part600-app-id1024.pdf); see also 40 Years of Experience With the Fair Credit Reporting Act: An FTC Staff Report With Summary of Interpretations at 68 (FTC July 2011) (same) (available at https://www.ftc.gov/sites/default/files/documents/reports/40-years-experience-fair-credit-reporting-act-ftc-staff-report-summary-interpretations/110720fcrareport.pdf).

Albeit in the context of mortgages, several decisions have put this law and guidance into practice. In Groff v. Wells Fargo Home Mortgage., Inc., 108 F. Supp. 3d 537, 540-42 (E.D. Mich. 2015), Judge David Lawson found that, where a plaintiff did not dispute that his personal obligation to pay a note was discharged in bankruptcy, there was nothing false or "inaccurate" about the defendant bank's reporting of the mortgage loan account as closed with a zero balance. In the words of the court, "[t]he debt was eliminated, and the bank reported it as such." Judge Lawson relied upon several prior opinions. One was the decision of the Tenth Circuit in Schueller v. Wells Fargo & Co., 559 F. App'x 733, 737 (10th Cir. 2014), in which the court held that the plaintiff did "not carr[y] his burden of showing that the information Wells Fargo furnished was

5

inaccurate[,] incomplete, . . . [or] materially misleading" when the bank reported that the plaintiff's account was closed, the balance was zero, and no payments were made, because the bankruptcy extinguished the plaintiff's personal obligation on the note." The other was Horsch v. Wells Fargo Home Mortgage, 94 F. Supp. 3d 665 (E.D. Pa. 2015), in which the court quoted the FTC guidance and explained that reports of the plaintiffs' loans "as closed with a zero balance were not just minimally complete, but were as complete as they could be." See also Helmes v. Wachovia Bank, N.A. (In re Helmes), 336 B.R. 105, 107 (Bankr. E.D. Va. 2005) ("[A] discharged debt represents a historical fact, that the prospective borrower filed bankruptcy in the past and was relieved from the obligation.").

These principles hold true here. The November 1, 2017 Trans Union Investigations Results reveal that both Macy's and Citibank were reporting Blanch's accounts with the following notations: "Chapter 13 Bankruptcy; Acct Info Disputed By Consumr; Account Included In Bankruptcy; Account Closed by Credit Grantor; Account Balance: $0". There was nothing false or "inaccurate" about Macy's or Citibank reporting Blanch's accounts as included in her bankruptcy, closed, and with a zero balance. Blanch does not dispute that her personal obligation to pay any amount once due on either account was discharged by her bankruptcy, and she does not contend that Macy's or Citibank ever made any effort to compel her to make further payments after that discharge, or that she would have had any obligation to do so if either party had. In short, Blanch's debts to Macy's and Citibank were eliminated, and Macy's and Citibank reported the situation as such. Under these circumstances, the Court concludes that Blanch has not carried her burden of pleading that the information Macy's or Citibank furnished was inaccurate or incomplete, nor has she pleaded that the information about the Macy's or Citibank accounts was

materially misleading. Accordingly, Blanch has not made out a plausible claim that Macy's or Citibank has negligently or willfully violated the FCRA.

IV. Conclusion

The Motion to Dismiss (Doc. No. 38) will be **GRANTED**.

An appropriate order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE